UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JOHN BAYER,

        Plaintiff,

v.                                                          Case No.    06-C-365

MARINETTE COUNTY and RICK BERLIN,

        Defendants.

## MEMORANDUM DECISION AND ORDER

On March 27, 2006, Plaintiff John Bayer, the owner of Scooter's tavern in the Town of Peshtigo, commenced this action under 42 U.S.C. § 1983 against Marinette County Deputy Sheriff Rick Berlin and other members of the Northeast Tri-County Drug Task Force for unlawfully entering and searching a portion of his tavern not held open to the public. The other law enforcement officers have been dismissed, and only Deputy Berlin, who led the raid, and Marinette County, which is required to indemnify Deputy Berlin, remain. The case is presently before the Court on the remaining defendants' motion for summary judgment. The defendants contend that the undisputed facts establish that the warrantless entry and search of the downstairs living quarters was justified by exigent circumstances or, alternatively, that Deputy Berlin's good faith belief that his entry was justified entitles him to immunity from suit under § 1983. For the reasons stated herein, the defendants' motion will be denied.

## BACKGROUND

In 2004, Scooter's tavern offered nude and semi-nude dancing entertainment. In response to reports of prostitution occurring at Scooter's tavern and illegal drug use in the downstairs portion of the building, the Northeast Tri-County Drug Task Force initiated an investigation. (Def.'s PFOF ¶¶ 8-10.) On several occasions beginning in October 2004, undercover officers were sent into Scooter's posing as customers. On October 18, 2004, the officers observed no illegal activity. However, on October 21, 2004, a dancer whose stage name was "Chocolate" offered the officers sex for $150 and, when asked if she had any marijuana, stated she was "out" but said she would have more the following night and admitted that she had smoked marijuana with a customer earlier that evening. (Def.'s PFOF ¶ 13.) The officers returned again on October 27, but noted no illegal conduct. (Def.'s PFOF ¶ 16.) When they were next there on November 4, 2004, a dancer named "Special" offered them sex for $150. Special also admitted that she had been using Vicodin that evening, and the officers noted they could smell marijuana on her breath when she came up from the downstairs dressing area. (Def.'s PFOF ¶ 17.) Based on this information, Deputy Berlin decided that law enforcement would enter the tavern and conduct an investigation.

At approximately midnight on November 4, 2004, Deputy Berlin entered the tavern with between ten and fifteen law enforcement officers and proceeded to the downstairs area where he and the other officers conducted an extensive search without a warrant. (Def.'s PFOF ¶¶ 22-32.) Small amounts of drugs, including marijuana, cocaine, and Hydrocodone, were found in the purses of three of the dancers. (Def.'s PFOF ¶¶ 36, 47, 48.) In addition, one of the three dancers admitted to selling or giving ten tablets of Vicodin to another. (Def.'s PFOF ¶ 43, 44.) All three of the dancers linked to the drug activity were arrested. (Def.'s PFOF ¶ 46.) Based on the results of the

2

investigation, the Peshtigo Town Board elected not to renew Scooter's liquor license, a decision that was the subject of a previous action Bayer brought in this court. *See* Bayer v. Town of Peshtigo, No. 05-C-661 (E. D. Wis. Sept. 12, 2006).

In this case, Bayer claims that Deputy Berlin violated his Fourth Amendment rights by entering the private living quarters of his premises without a warrant and without consent. Although Deputy Berlin claims Bayer gave consent for the search of the downstairs area and also disputes Bayer's claim that the downstairs area was not open to the public, the defendants recognize that these factual disputes cannot be resolved on summary judgment. Instead, they argue they are entitled to summary judgment because, even assuming the downstairs area was not open to the public and Bayer did not give consent, the search was nevertheless justified under the exigent circumstances exception to the search warrant requirement. Under the circumstances confronting him at the time, the defendants contend, Deputy Berlin had a reasonable expectation that the evidence he sought (drugs) would be destroyed before he could obtain a warrant. Given these circumstances, his immediate entry without a warrant was reasonable. In the alternative, the defendants argue that Deputy Berlin is immune from suit because he had a good faith belief that his actions were lawful.

**DISCUSSION**

**1. Exigent Circumstances**

The Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const., Amdt. 4. The Supreme Court has interpreted this language to prohibit law enforcement

3

officers from entering an individual's home or dwelling without a warrant in all but exceptional cases. *Payton v. New York*, 445 U.S. 573, 586 (1980). Among the exceptions to the requirement for a warrant recognized by the Court is the presence of exigent circumstances. *Welsh v. Wisconsin*, 466 U.S. 740, 749 (1984). Exigent circumstances exist when there is a compelling need for official action and no time to secure a warrant. *Michigan v. Tyler*, 436 U.S. 499, 509 (1978). When determining whether exigent circumstances exist, the court must analyze the situation from the perspective of the officers at the scene. The test is whether they had a reasonable belief that there was a compelling need to act and no time to procure a search warrant. *United States v. Andrews*, 442 F.3d 996, 1000 (2006); *United States v. Saadeh*, 61 F.3d 510, 516 (7th Cir.), cert. denied, 516 U.S. 990 (1995).

The Supreme Court recently reaffirmed that exigent circumstances may exist where there is a need to prevent the imminent destruction of evidence. *Brigham City v. Stuart*, ___ U.S. ___, ___, 126 S.Ct. 1943, 1947 (2006) (*citing Ker v. California*, 374 U.S. 23, 40 (1963)). In *Schmerber v. California*, 384 U.S. 757, 770-71 (1966), the Court held that even as intrusive a "search" as a compelled blood test for alcohol following the defendant's arrest for driving while intoxicated did not violate his Fourth Amendment right against unreasonable searches and seizures where it was shown that delay in obtaining the blood would have resulted in the loss of evidence, i.e., dissipation of alcohol in the blood. *Id.* at 770-71. It is this justification that the defendants contend is applicable here.

The defendants contend that under the circumstances of this case, Deputy Berlin reasonably believed that immediate entry into the lower section of Scooter's was necessary in order to prevent the imminent destruction of evidence. They note that at the time Deputy Berlin and his law

4

enforcement team entered the bar, several dancers were in the lower level. This fact, they argue, together with the fact that there were bathrooms in the downstairs level with toilets, sinks, and showers in which the drugs could be quickly tossed, necessitated prompt action to avoid destruction of evidence. Because the undercover investigation had established probable cause to believe there were illegal drugs in the lower level, and because Deputy Berlin reasonably thought the destruction of the drugs was imminent, the defendants argue the warrantless entry and search was justified.

This argument fails, however, because it ignores the fact that it was the conduct of Deputy Berlin that created the exigency that the defendants now claim justified the warrantless entry. It is well-established that law enforcement officers cannot justify their search on the basis of exigent circumstances of their own making. *United States v. Duchi*, 906 F.2d 1278, 1284 (8th Cir. 1990); *United States v. Buchanan*, 904 F.2d 349 (6th Cir.1990); *United States v. Thompson*, 700 F.2d 944, 950 (5th Cir. 1983); *United States v. Rosselli*, 506 F.2d 627, 630 (7th Cir.1974); *United States v. Curran*, 498 F.2d 30, 34 (9th Cir.1974); *Niro v. United States*, 388 F.2d 535, 539 (1st Cir.1968). In this case, Deputy Berlin elected to enter the tavern without a warrant after being apprised of the undercover officers' observations even though, by his own admission, he had sufficient evidence to establish probable cause for a warrant. By entering the tavern without a warrant under these circumstances, he caused the very exigency that he now claims justifies the warrantless entry of the lower level. He alerted the occupants of the tavern to the presence of police and their interest in searching for drugs. If this were enough to show exigent circumstances, a warrant would never be required to search a person's home for drugs as long as there was probable cause to believe drugs were being stored inside. An officer could simply appear at the door and ask permission to search. Upon refusal, any reasonable officer would be justified in believing that the drugs would be gone

5

by the time he returned with a warrant. Clearly, if the requirement for a warrant is to be meaningful, more must be shown to establish exigent circumstances.

The defendants also argue that the warrantless entry was justified because there was reason to believe that the dancers were in the process of consuming the drugs which would likewise have resulted in their destruction before a warrant could have been obtained. But this argument was seemingly rejected by the Supreme Court almost sixty years ago. In *Johnson v. United States*, 333 U.S. 10 (1948), the Supreme Court held that while the smell of burning opium outside a hotel room may be sufficient to justify the issuance of a warrant, it does not justify entry of the room without a warrant. Although the Court recognized in *Johnson* that there are exceptions to the requirement for a warrant, it found none of them applicable in the case before it:

> No reason is offered for not obtaining a search warrant except the inconvenience to the officers and some slight delay necessary to prepare papers and present the evidence to a magistrate. These are never very convincing reasons and, in these circumstances, certainly are not enough to bypass the constitutional requirement. No suspect was fleeing or likely to take flight. The search was of permanent premises, not of a movable vehicle. No evidence or contraband was threatened with removal or destruction, except perhaps the fumes which we suppose in time will disappear. But they were not capable at any time of being reduced to possession for presentation to court. The evidence of their existence before the search was adequate and the testimony of the officers to that effect would not perish from the delay of getting a warrant.

*Id.* at 15. The Court concluded, "[i]f the officers in this case were excused from the constitutional duty of presenting their evidence to a magistrate, it is difficult to think of a case in which it should be required." *Id.* Bayer notes that the Supreme Court has not retreated from this holding and argues that because "the essential facts of this case are on all fours with those in *Johnson*" (Pl.'s Br. In Opp. at 12), Deputy Berlin's warrantless search of the lower level of his establishment was clearly unlawful.

6

On the other hand, notwithstanding the Supreme Court's decision in *Johnson*, courts in several other states, including two state supreme courts, have held that the smell of burning marijuana may be sufficient to establish exigent circumstances to enter a premises without a warrant. In *Mendez v. People*, 986 P.2d 275 (Colo. 1999), for example, the Supreme Court of Colorado held that officer's warrantless entry into defendant's motel room after detecting a strong odor of marijuana emanating from under the door to the room fell within the exigent circumstances exception to the warrant requirement. In reaching its decision, the Court noted that "[t]his odor indicated that evidence of a crime, that is, possession of marijuana, was in the process of being burned and thereby destroyed." *Id.* at 282. As a result, the Court concluded that "there was a very real and substantial likelihood that contraband would continue to be destroyed before a warrant could be obtained to search the motel room." *Id.*

The Supreme Court of Arizona reached the same result in *State v. Decker*, 580 P.2d 333 (Ariz. 1978). In *Decker*, a police officer who had been dispatched to a motel to investigate a report of a prowler on the roof detected a strong odor of burned marijuana emanating from one of the motel rooms. The officer knocked on the door and announced his presence. When the occupant refused to open the door, the officer kicked the door in and saw the occupant trying to throw a baggie of marijuana out the window. In upholding the warrantless entry, the Arizona Supreme Court held that the same evidence that established probable cause, i.e. the smell of burning marijuana, also indicated the need for immediate action by the officer: "The smell in this case alone indicated the contraband was being destroyed. . . . . The delay necessary to obtain a warrant could mean that the marijuana would have been completely destroyed. We find that there is here an exigent circumstance." *Id.* at 336; *see also Vaillancourt v. Superior Court for County of Placer*,

7

273 Cal.App.2d 791, 797, 78 Cal.Rptr. 615, 619 (1969) ("Here, the officers detected the smell of burning marijuana which would clearly indicate that a crime was being committed in their presence. The burning would also indicate that the evidence was in fact disappearing, unlike the situation in [*People v.*] *Marshall* [69 Cal.Rptr. 585, 442 P.2d 665 (Cal. 1968)] where there was no imminent destruction of the contraband."); *see, generally,* Fern L. Kletter, Annotation, *Validity of Warrantless Search of Other than Motor Vehicle or Occupant of Vehicle Based on Odor of Marijuana--State Cases,* 122 A.L.R.5th 439 (2004).

The holdings in these cases are certainly questionable in light of *Johnson*. But even assuming their validity, this case differs in several material respects. In *Mendez* and *Decker*, the officers were suddenly and unexpectedly confronted with evidence of a crime they were not investigating. Each officer immediately entered the room from which the smell of burning marijuana was emanating in an effort to seize the contraband before it was consumed. In this case, by contrast, Deputy Berlin was involved in an ongoing investigation concerning the use of illegal drugs at Scooter's. The information obtained by the undercover officers on November 4, 2004, was precisely the kind of evidence he was seeking and expected to find. He therefore could have easily anticipated the need for a warrant and even begun preparations for one. It is also significant that, unlike the officers in *Mendez* and *Decker*, the undercover officers in this case did not report the smell of burning marijuana emanating from the lower level of the tavern. Instead, they reported the smell of marijuana on Special's breath when she came up from the lower level. (Def.'s PFOF ¶ 17.) There is no evidence that the drug was then being consumed, and the record does not disclose how long after it is smoked marijuana remains detectable on a person's breath. More importantly, even after he was aware that a dancer coming up from the dressing rooms had the smell of marijuana on

8

her breath, Deputy Berlin did not immediately enter the downstairs area to seize the evidence before it disappeared. Instead, he requested assistance and apparently waited until more officers arrived. The record shows that the undercover officers reported their observations to Deputy Berlin at approximately 10:15; yet entry was not made until around midnight when ten to fifteen officers entered the tavern through three separate doors. No explanation has been offered as to why a warrant could not have been obtained in the time that elapsed.

A showing of exigent circumstances requires evidence that there was no time to procure a warrant. In *United States v. Marshall,* 157 F.3d 477 (7th Cir. 1998), for example, the Court held that police acted reasonably in entering a home without a warrant to prevent the occupant from destroying the methamphetamine he had been selling. In so ruling, the Court considered the fact that the officers conducting the investigation were working under a state law that did not authorize the issuance of telephonic warrants. The government presented evidence that obtaining a warrant outside of regular business hours was a time-consuming process which involved locating a prosecuting attorney to review the application materials and going to a judge's home to have the warrant issued. Based on this evidence, the Court upheld the district court's finding that there was no time to obtain a warrant. *Id.* at 483. No such showing has been made here, however. Wisconsin law permits an application for a search warrant to be made over a telephone, radio, or other means of electronic communication. *See* Wis. Stat. § 968.12(3)(a). Yet, the record is silent as to what steps Deputy Berlin would have had to take to obtain a warrant and why he felt there was insufficient time. The Seventh Circuit has observed that when emergency justification is claimed, "it is appropriate to appraise the agents' conduct during the entire period after they had a right to obtain a warrant and not merely from the moment when they knocked at the front door." *Rosselli*,

9

506 F.2d at 630. Here, the record reflects that in the almost two hours that passed between the time police gathered the information upon which their determination of probable cause was based and the time they made entry to the lower level, Deputy Berlin made no effort to obtain a warrant but simply called for reinforcements. On this record, I cannot conclude that there was insufficient time to obtain a warrant in this case. It thus follows that, at least on the record as it now stands, exigent circumstances have not been shown and the failure to obtain a warrant before entering the lower level of his tavern may have violated Bayer's Fourth Amendment rights.

**2. Good faith immunity**

There remains the question of whether the undisputed evidence shows that Deputy Berlin is immune from liability. The Supreme Court has held that law enforcement officers are immune from liability for damages under § 1983 unless their actions violate clearly established constitutional rights of which a reasonable law enforcement officer would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The qualified immunity standard is intended to provide "ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The rationale for granting such protection to government actors is clear:

> Such officials as police officers or prison wardens, to say nothing of higher level executives levels who enjoy only qualified immunity, routinely make close decisions in the exercise of the broad authority that necessarily is delegated to them. These officials are subject to a plethora of rules, "often so voluminous, ambiguous, and contradictory, and in such flux that officials can only comply with or enforce them selectively." See P. Schuck, Suing Government 66 (1983). In these circumstances, officials should not err always on the side of caution. Officials with a broad range of duties and authority must often act swiftly and firmly at the risk that action deferred will be futile or constitute virtual abdication of office.

*Davis v. Scherer*, 468 U.S. 183, 195-96 (1984) (internal quotation omitted)

10

In determining whether this qualified immunity applies, a court is required to determine first whether "the facts alleged show the officer's conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If the court concludes the a constitutional violation has been shown, it must then determine "whether the right was clearly established." *Id.* at 202. As to the second issue, the relevant inquiry is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.*

Of course, in deciding whether the second prong of the test is met, it is not enough simply to point to a general right such as the Fourth Amendment right of persons to be free from warrantless searches of their homes. Unless greater particularity is required, the protection the doctrine of qualified immunity is intended to provide to public officials would disappear. *Anderson v. Creighton,* 483 U.S. 635, 639 (1987) ("But if the test of "clearly established law" were to be applied at this level of generality, it would bear no relationship to the "objective legal reasonableness" that is the touchstone of Harlow. Plaintiffs would be able to convert the rule of qualified immunity that our cases plainly establish into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights."). It thus follows that "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* While this does not mean that a state actor is protected by qualified immunity unless the very action in question has previously been held unlawful, it does mean that the unlawfulness of the act alleged must be apparent in the light of pre-existing law. *Id.* "[I]n cases where there is a legitimate question whether an exception to the warrant requirement exists, it cannot be said that a warrantless search violates clearly established law." *Mitchell v. Forsyth*, 472 U.S. 511, 535 n.12 (1985).

11

In this case, the Supreme Court's decision in *Johnson* certainly suggests that Deputy Berlin's decision to enter the lower level of Scooter's without a warrant violated Bayer's Fourth Amendment rights. But in *Johnson* no significant reason was offered for the failure to obtain a warrant. The fact that the odor of the burning opium not only provided probable cause to believe a crime was being committed, but meant that the drug itself was in the process of being destroyed, was left unmentioned. 333 U.S. at 15. When that fact was considered in *Mendez* and *Decker*, the supreme courts of Colorado and Arizona, respectively, found after careful consideration that exigent circumstances justifying immediate entry were shown, notwithstanding the United States Supreme Court's decision in *Johnson*. It would seem incongruous to hold a deputy sheriff required to make a split-second decision in the field to a higher standard than the justices on two separate state supreme courts each of whom has the advantage of full briefing on the issue, argument of counsel and abundant time for deliberation.

Also noteworthy is the fact that when the undercover officers were at the tavern several days earlier and had inquired about marijuana, "Chocolate" told them she was out for the evening. This fact suggests that the dancers did not keep large amounts of marijuana with them and increases the likelihood that delay would have resulted in the loss of whatever small amounts of the drug the dancers kept with them. And because access to the area in which the drug use was occurring, though not open to the public, was not limited to one or two people like an apartment or hotel room would be, delay would most likely have prevented police from discovering the person or persons responsible for the illegal activity. These considerations all suggest that had Deputy Berlin elected to immediately enter the lower level upon being advised by the undercover officers that they smelled burning marijuana, he would be immune from liability.

But those are not the facts before me. The report was that the officers smelled marijuana on the breath of a dancer; not that marijuana was then being consumed in the lower level. And while the defendants now claim the circumstances were so urgent that there was no time to procure a warrant, the record reflects that they waited almost two hours before entering the tavern to seize the drugs. Without some evidence that the drugs were actually being consumed and that a warrant could not have been obtained in the same amount of time police actually waited before entering, I cannot say Deputy Berlin's decision was made in good faith.

The defendants argue that Bayer has no standing to challenge law enforcement's search of the dancers' personal belongings, and that is true. *See United States v. Payner*, 447 U.S. 727, 731 (1980). But he does have standing to assert his own right to be free of warrantless intrusions into areas of his premises that are not open to the public. Bayer claims that the lower level of his tavern was such an area, and it will be for a jury to decide that issue, as well as the others that remain. The defendants have failed to establish on the record before me either that there were exigent circumstances that made a warrant unnecessary or that Deputy Berlin's decision to enter without a warrant was made in good faith. Their motion for summary judgment is therefore denied, and the clerk is directed to set this matter on the Court's trial calendar.

**SO ORDERED** this   9th   day of July, 2007.

      s/ William C. Griesbach  
      William C. Griesbach  
      United States District Judge