UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JOHN BAYER,

    Plaintiff,

 v.                  Case No. 06-C-365

MARINETTE COUNTY and
RICK BERLIN,

    Defendants.

**DECISION AND ORDER ON FEES**

Plaintiff John Bayer, the owner of a Scooters, a tavern that featured exotic dancing, commenced this action against Marinette County, Deputy Sheriff Rick Berlin, and other members of the Northeast Tri-County Drug Task Force for unlawfully entering and searching a portion of his tavern that was closed to the general public. Bayer claimed that the Defendants violated his rights under the Fourth Amendment by entering and searching the downstairs area of his bar without a warrant. The search was the culmination of an undercover investigation of a complaint that the dancers at Scooters were engaging in prostitution and illegal drug use. After two occasions when undercover officers posing as customers reported that dancers admitted involvement with drugs and smelled of marijuana when they came upstairs from their dressing rooms, Deputy Berlin ordered a raid which resulted in the discovery of small amounts of drugs, including marijuana, cocaine, and Hydrocodone, in the downstairs area among the personal effects of several of the dancers.

All of the Defendants, with the exception of Deputy Berlin, who led the raid, and Marinette County, which was required to indemnify Deputy Berlin, were dismissed during the discovery phase

of the case. After the denial of the remaining Defendants' motion seeking summary judgment on the ground that the entry and search of the downstairs area were justified by exigent circumstances, the case proceeded to trial on their alternative defense that Bayer had consented to the search. Following a day-and-a-half of trial, a jury found that Bayer had not consented to the entry and search, but awarded him only nominal damages of one dollar. Plaintiff has now moved under 42 U.S.C. § 1988 for an award of attorney's fees and non-taxable expenses in excess of $97,000 or such lesser amount as the Court deems just. (Doc. # 69, ¶ 6.) That amount has recently been increased significantly to reflect the work done in connection with the fee request.

At the request of the Defendants, I allowed the matter to be bifurcated so that the question of whether *any* fees were justified could be briefed before the question of *how much*. After considering the briefs and arguments of the parties, I directed the Defendants to submit a brief outlining their objections to the amount requested as it appeared that "this case is one in which an award of fees might be justified." (Doc. # 94.) Now, however, having given further consideration to the arguments of counsel and the Seventh Circuit law on the issue, I conclude that a fee award would not be justified. I note at the outset that in reaching this conclusion, I do not intend to demean the excellent representation provided by plaintiff's attorney. Instead, I conclude on the basis of *Farrar v. Hobby*, 506 U.S. 103 (1992), and the Seventh Circuit cases applying it, that an award of fees in this case would be improper. My reasons follow.

Defendants portray Bayer's victory as technical, at best. They note that Bayer had sought monetary relief from the beginning of this case: he initially sought compensatory damages for loss of business profits when his liquor license was not renewed, as well as damages for personal injury, including emotional distress, loss of sleep, and the like, stemming from what the jury found was

2

Deputy Rick Berlin's unauthorized search. The lost profits claim was later abandoned, however, and the case went to trial on Bayer's claims for personal injuries and punitive damages. The jury rejected Bayer's claim that he suffered any personal injury and awarded him only one dollar as nominal damages. Similarly, the jury found no basis to award punitive damages for any intentional disregard of Bayer's rights. Ultimately, the Defendants believe that Bayer won only a Pyrrhic victory—undertaking more than a year of litigation and a jury trial merely for a determination that he suffered the violation of a right which the jury found resulted in no compensable harm. Because Bayer is only technically a prevailing party, they argue, he should not be awarded any attorney's fees.

The statute authorizing the awarding of fees is the Civil Rights Attorneys Fees Act of 1976, which reads as follows:

> In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318 . . . , or title VI of the Civil Rights Act of 1964 . . . , the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

42 U.S.C. § 1988. The purpose of the Act was to ensure "effective access to the judicial process" for persons with civil rights grievances. H.R.Rep. No. 94-1558, p. 1 (1976). Accordingly, the Court has interpreted it to mean that "a prevailing plaintiff 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'" *Hensley v. Eckerhardt*, 461 U.S. 424, 429 (1983) (*quoting Newman v. Piggie Park Enterprises*, 390 U.S. 400, 402 (1968)).

Defendants concede that Bayer was a prevailing party because the jury found in his favor. Under *Farrar v. Hobby,* "a plaintiff who wins nominal damages is a prevailing party under § 1988. When a court awards nominal damages, it neither enters judgment for defendant on the merits nor

3

Case 1:06-cv-00365-WCG   Filed 08/27/08   Page 3 of 11   Document 104

declares the defendant's legal immunity to suit." 506 U.S. 103, 112 (1992). Yet *Farrar* emphasized that the degree of a plaintiff's success was of crucial importance in a court's decision whether to award fees in the first place. In that case, the jury awarded the plaintiffs only nominal damages, in stark contrast to the $17 million they had sought. The Supreme Court found that "'a district court, in fixing fees, is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought.'" *Id.* at 114 (quoting *Riverside v. Rivera,* 477 U.S. 561, 585, (1986) (Powell, J., concurring in judgment)). "Having considered the amount and nature of damages awarded, the court may lawfully award low fees or no fees," rather than engaging in a more typical calculation based on the number of hours worked multiplied by an hourly rate. *Id.* at 115.

In fact, in upholding the court of appeals' reversal of the district court's fee award, the Supreme Court in *Farrar* suggested that no fees should be the norm in a case where a plaintiff seeking compensatory damages was awarded only nominal damages:

> In some circumstances, even a plaintiff who formally "prevails" under § 1988 should receive no attorney's fees at all. A plaintiff who seeks compensatory damages but receives no more than nominal damages is often such a prevailing party. As we have held, a nominal damages award does render a plaintiff a prevailing party by allowing him to vindicate his "absolute" right to procedural due process through enforcement of a judgment against the defendant. In a civil rights suit for damages, however, the awarding of nominal damages also highlights the plaintiff's failure to prove actual, compensable injury. Whatever the constitutional basis for substantive liability, damages awarded in a § 1983 action "must always be designed 'to compensate injuries caused by the [constitutional] deprivation.'" *When a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief, the only reasonable fee is usually no fee at all*.

*Id.* (citations omitted)(italics added).

Although Justice O'Connor's concurrence in *Farrar* did not narrow the majority's analysis (she joined the opinion in full), the Seventh Circuit has adopted its test as helpful in determining

4

whether a nominal victory should be accompanied by an attorney's fees award. Justice O'Connor's factors include: (1) the difference between the judgment recovered and the recovery sought; (2) the significance of the legal issue on which the plaintiff prevailed; and (3) the public purpose of the litigation. *Id.* at 122. In applying these factors, the Seventh Circuit has never affirmed a fee award in a case where only nominal damages were recovered. Instead, the Court has on three occasions since *Farrar* reversed district courts for abusing their discretion in awarding attorneys fees under § 1988 where the only recovery was nominal damages.

In *Cartwright v. Stamper*, 107 F.3d 106 (7th Cir. 1993), for example, the plaintiffs sued a state police officer for illegally entering their apartment out of her purported concern for the safety of one of the plaintiffs who was a complainant in a sexual harassment case against the director of the State Lottery where she was employed. 7 F.3d at 107. The district court dismissed the plaintiffs' claim for punitive damages at trial, and the jury rejected that plaintiffs' claim that the entry was part of a conspiracy to obtain documents concerning the sexual harassment claim. However, the jury found for the plaintiffs on their Fourth Amendment and trespass claims and awarded them nominal damages. *Id.* at 109-10. Although the district court reduced the plaintiffs' fee request of $82,000 by one third, the Seventh Circuit, applying *Farrar*, concluded that even this was too much and held that "the appropriate fee is no fee." *Id.* at 110.

In *Willis v. City of Chicago*, 999 F.2d 284 (7th Cir. 1993), another nominal damage case, the Court likewise concluded that attorney's fees were not warranted. In that case, the district court had held on summary judgment that Willis was held by Chicago police officers in violation of his Fourth Amendment right to a prompt judicial determination of probable cause. 999 F.2d at 286-87. He had been taken into custody on suspicion for a series of aggravated sexual assaults and was not

5

taken before a magistrate for 45 hours while police investigated his potential involvement in additional crimes. A jury rejected a second claim that he had been unconstitutionally denied food and use of a bathroom for twelve hours, as well as his claim for $1 million in punitive damages. *Id.* Nevertheless, the district court awarded him $139,350.43 in attorneys' fees. Noting that the plaintiff's victory was limited to "a recognition that his constitutional rights had been violated by the City and to a nominal award of one dollar," the Seventh Circuit concluded that "*Farrar* requires that we reverse the district court's award of attorneys' fees." *Id.* at 290.

Finally, in *Maul v. Constan*, 123 F.3d 143 (7th Cir. 1993), an inmate in an Indiana correctional facility sought $100,000 claiming he was forced to take psychotropic medication without a prior due process hearing. The district court awarded the plaintiff $22,500 in compensatory damages, but in an earlier appeal the Seventh Circuit had reversed on the ground that the plaintiff had failed to demonstrate that he was actually injured by the denial of his right to procedural due process and remanded to the district court for assessment of $1 nominal damages against each defendant. 23 F.3d at 144. A second appeal was taken from the district court's award of attorney's fees of more than $18,000. Applying *Farrar*, the Court reversed the fee award, concluding that "the difference between the judgment sought and obtained was great and the public purpose of the litigation was minimal. Since plaintiff's victory was de minimis, an award of attorney's fees was inappropriate." *Id.* at 147.

With these cases in mind, I turn to the facts of this case. The first of these considerations is the most important, as the comparison between what the plaintiff sought and what he received encapsulates the ultimate question asked in this analysis: was the plaintiff merely successful in a technical sense, or did he achieve something more than a nominal victory? What Bayer actually

6

sought is somewhat in dispute. In closing arguments, counsel sought compensatory damages of between five and ten thousand dollars. Counsel also sought a similar range of punitive damages, although he was less specific in that regard. The transcript can be interpreted in different ways, however, and the defendants believe counsel was suggesting a punitive damages figure of up to twenty times the award for compensatory damages. Without resolving the dispute, it is clear that the a jury was asked to award *at least* ten thousand dollars—the low end of what counsel sought for compensatory damages plus a comparable figure for punitives—and a range of twenty thousand dollars or more was certainly on the table. (Seiler Aff., Ex. 2 at 26-27.)[1]

Bayer argues that the nature of this case was such that it was never going to be a large damages generating case; he should not be penalized, he suggests, merely because his case was not a money maker. But that misses the point. The point of *Farrar* and its progeny is *not* to discourage fees in "small claims" civil rights cases—as the Supreme Court recently noted in *Hudson v. Michigan,* fee awards, even in small damages cases, can provide a deterrent to police misconduct. *Hudson v. Michigan*, 547 U.S. 586, 597-98 (2006). Indeed, in *Hyde v. Small,* the Seventh Circuit noted that "[w]hen the civil rights plaintiff aims small, and obtains an amount that is significant in relation to that aim (it need not reach the target), he is prima facie entitled to an award of fees even if the case establishes no precedent." 123 F.3d 583, 585 (7th Cir. 1997). Rather than discouraging

---

[1] The plaintiff's ethical argument is well-taken, and I do not consider it some sort of strike against him that his attorney sought certain figures in closing argument. (Reply Br. at 10-13.) My decision does not turn on whether the plaintiff sought $100,000 or $10,000—Bayer would be denied fees regardless of whether one dollar represented .01% or .001% of what he sought. (In truth, the one dollar awarded is a fiction—the jury essentially awarded *zero* dollars.) The fact is that he sought *some* compensatory and punitive damages of at least ten thousand dollars, and receipt of only one dollar constitutes, by any account, a complete failure from a financial perspective and evidences the jury's belief that he suffered no actual injury.

7

fees in small claims cases, the point of *Farrar* is to snuff out fees when there has been *no* appreciable injury at all: "[i]n a civil rights suit for damages, . . . the awarding of [only] nominal damages also highlights the plaintiff's failure to prove actual, compensable injury." 506 U.S. at 115. Had Bayer sought $10,000 and been awarded $1,000—or even $250—it would have at least shown that the jury found he was actually injured. *See Borst v. O'Brien,* 979 F.2d 511 (7th Cir. 1992). Instead, by awarding him only nominal damages—at most, one-ten-thousandth of what he sought, the jury told Bayer it did not believe he suffered any injury.

The second consideration asks about the importance of the issue on which the plaintiff prevailed. Like the first consideration, this analysis has been interpreted as a gauge of how successful the plaintiff was in light of what he sought: did he win on a single, minor, claim out of twelve, or was he entirely successful on all or most of his claims? "Of the three factors, however, the significance of the issue on which the party prevailed tends to be the least weighty in classifying the victory." *Cartwright v. Stamper,* 7 F.3d at 110. Bayer notes that he was successful on the only claim tried to a jury, which is true. In other words, unlike the plaintiff in *Farrar*, he did not lose on a number of other claims. Thus, as the Defendants concede, this factor mildly suggests that Bayer's victory was not completely *de minimis*.

The final consideration asks whether any public purpose was served, or whether instead the lawsuit merely sought the redress of a private injury. As the court noted in *Cartwright,* "[a]n award of punitive damages . . . is strong evidence that the victory served a public purpose." *Id.* The court in *Cartwright* found it important that no punitive damages were awarded, a factor which "weighs firmly in favor of finding the victory technical." *Id.* Similarly, in this case the jury was asked to award punitive damages but found no basis to do so, suggesting little *public* import to this lawsuit.

8

In addition, the fact that the lawsuit involves the Fourth Amendment does not elevate Bayer's fee claim above any other civil rights claim—*Cartwright* was also a Fourth Amendment case involving a claim that the plaintiff had suffered emotional distress due to the defendant's warrantless entry.

Moreover, Bayer's argument for fees cannot bootstrap onto the underlying violation, because that would make redundant any fee analysis. *Any* constitutional violation is a serious matter, and any successful plaintiff could easily speculate that his case will deter future violations and aid the public. That is not enough: "[s]omething more is needed." *Maul v. Constan,* 23 F.3d at 146. In *Maul*, the court rejected the plaintiff's argument that his lawsuit served a public purpose because it found he "brought suit only on his own behalf, alleging only violations of his own rights." *Id.* The same is true here. As in *Maul* and *Cartwright*, the absence of punitive damages combined with the essentially private nature of the lawsuit compels the conclusion that there was little public impact to Bayer's lawsuit.

> Here, however, the plaintiff failed to establish anything more than that he had been denied a protected right: he did not establish that he had suffered actual injury (hence the award of only nominal damages); he did not obtain an injunction prohibiting future violations; and he did not establish that the defendants' conduct was sufficiently reprehensible to warrant punitive damages.

*Id.* at 146-47.[2]

---

[2] Bayer argues that the absence of punitive damages is a basis for applying the O'Connor test in the first place—*all* cases in which the above analysis takes place presumably involve an absence of punitive damages. As such, it is somewhat unfair to hold the absence of punitive damages against the plaintiff as if that were an *additional* consideration. I am not certain that is true, however, as the O'Connor analysis would also seemingly apply to a case where a plaintiff won *small* amounts of damages. Thus, the fact that courts might highlight the point when a jury has declined to award punitive damages in a given case does not necessarily mean those courts are in error.

In addition, Bayer applies the O'Connor test a bit too rigidly, at one point stating that the Seventh Circuit erroneously applied the test in *Maul*. Although the circuit has adopted the test, the test is not itself the law—the *Farrar* majority opinion is what ultimately governs the analysis. The

9

Ultimately, Bayer relies on Justice O'Connor's observation that "nominal relief does not necessarily a nominal victory make." *Id.* at 121. In truth, however, it is difficult to see Bayer's victory as anything other than a nominal one. His situation, in fact, typifies the classic case in which a citizen's rights were violated—for a matter of minutes—with no lasting injury or ill effects. Indeed, his case is less compelling than many Fourth Amendment cases. The downstairs area of the bar illegally entered by the police, while not open to the public, lacked many of the qualities commonly associated with the home. Bayer had his handyman construct bedrooms in the downstairs area which he then rented to the dancers he hired from other parts of the State. The dancers also used a common kitchen and living room area, and bathroom. Bayer's appeal to the sanctity of the home notwithstanding, the downstairs in which his bedroom was also located, had few of the attributes of a private home and instead functioned more like a motel. Add to this the fact that the investigation had uncovered evidence of illegal drug use by the dancers in the downstairs area, and the jury's verdict is not such a surprise. The jury could simply have concluded that Bayer had jeopardized his own privacy by allowing such activity to go on in his establishment. While not an excuse for the failure of police to obtain a warrant, it does explain why the jury rejected Bayer's claim of emotional distress and concluded he suffered no compensable loss.

In conceding that the case was never about recovering a large sum of damages, counsel for Bayer seems to acknowledge as much. He then argues on the basis of pre-*Farrar* decisions extolling the need to insure effective representation in civil rights cases, that a lack of actual

---

test is helpful in setting forth some of the considerations expressed in that opinion, but Justice O'Connor's observations are certainly more casual and illustrative than the more typical constitutional "tests" courts routinely apply. This is not surprising, as the ultimate question is a rather pragmatic one: did the plaintiff win something of value or was his victory only a moral one?

damages should not result in the denial of a meaningful fee award. More recent cases, however, especially in the Seventh Circuit, make clear that the actual recovery, even in cases involving more than nominal damages, is a crucial factor in determining the size of the fee. *See, e.g.*, *Cole v. Wodziak*, 169 F.3d 486, 488-89 (7th Cir. 1999) (affirming district court's rejection of fee request for $85,000 and award of $13,336.86 where jury awarded damages of $4,500 ($2,000 in punitive damages) for Fair Housing Act violations). These more recent cases, perhaps in recognition of the skyrocketing cost of litigation, suggest an intent to limit fees that are disproportionate to the anticipated recovery and to eliminate any incentive to bring such lawsuits in the absence of actual injury or a larger public purpose.

In sum, Bayer's case was essentially a private action to recover damages for a constitutional violation experienced only by Bayer himself. He was able to take his case to his fellow citizens, who found a constitutional violation but no compensable injury. In his closing argument, Bayer's counsel noted that "we are allowed to determine damages only for provable injuries" and then proceeded to lay out Bayer's case for emotional distress: Bayer was "afraid" and "worried" during the search, and following the search he was "not the same happy John." (Seiler Aff., Ex. 2 at 24-25.) The jury's awarding of only nominal damages suggests an outright rejection of any notion that he was actually injured as a result of the violation. As set forth above, these considerations compel a finding that no attorney's fees should be awarded in this case. Accordingly, the plaintiff's motion for fees is **DENIED**.

**SO ORDERED** this ___26th___ day of August, 2008.

                                              s/ William C. Griesbach
                                              William C. Griesbach
                                              United States District Judge